1  Julie E. Patterson, California Bar No. 167326
   jepatterson@bryancave.com
2  Julie W. O'Dell, California Bar No. 291083
   julie.odell@bryancave.com
3  **BRYAN CAVE LLP**
   3161 Michelson Drive, Suite 1500
4  Irvine, California 92612-4414
   Telephone:  (949) 223-7000
5  Facsimile:  (949) 223-7100

6  Attorneys for Defendant
   PRECISION CASTPARTS CORP.
7

8                **UNITED STATES DISTRICT COURT**

9                **CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 10  RICARDO BALDERAS, on behalf of himself and all others similarly situated, | Case No. |
| 11 | (Los Angeles Superior Court Case No. BC540700) |
| 12         Plaintiffs, | |
| 13    vs. | **NOTICE OF REMOVAL BY DEFENDANT PRECISION CASTPARTS CORP. PURSUANT TO 28 U.S.C. §§ 1332, 1441, 1446, AND 1453 (DIVERSITY OF CITIZENSHIP)** |
| 14  PRECISION CASTPARTS CORP., an Oregon corporation; and DOES 1 to 100, Inclusive | |
| 15 | |
| 16         Defendants. | |
| 17 | Complaint Filed:  March 26, 2014<br>Trial Date:  Not Assigned |

**TO THE CLERK OF THE ABOVE-ENTITLED COURT, AND TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that, pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453, Defendant Precision Castparts Corp. ("PCC") hereby removes to this Court the state court action described below.

## BACKGROUND

1. On March 26, 2014, Plaintiff Ricardo Balderas ("Plaintiff") filed a putative class action lawsuit in the Superior Court of the State of California, County of Los Angeles, titled *Ricardo Balderas, on behalf of himself and all others similarly situated v. Precision Cast Parts Corp., an Oregon corporation; and DOES 1 to 100*, Los Angeles County Superior Court Case No. BC540700 (the "Action"). Declaration of Julie E. Patterson ("Patterson Decl.") ¶ 2.

2. As it was filed after February 18, 2005, the Action was commenced after the effective date of the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. 109-2 (enacted Feb. 18, 2005), codified at 28 U.S.C. §§ 1332(d), 1453, and 1711-1715.

3. The proof of service attached to the Summons and Complaint indicates that PCC was personally served on April 24, 2014. Patterson Decl. ¶ 3. A true and correct copy of the Complaint, Summons, and all other documents served on PCC in the Action are attached to the Patterson Declaration as Exhibit A. No other pleadings, process, or orders have been served on Defendant in the Action. *Id*. Because this Notice of Removal is filed within thirty days of service of the Complaint and Summons upon PCC, it is timely under 28 U.S.C. § 1446(b).

4. PCC has not yet responded to Plaintiff's Complaint. *Id.* ¶ 4.

5. In the Action, although Plaintiff does not name SPS Technologies, LLC[1] ("SPS") as a defendant, he alleges that PCC operates several businesses

---
[1] Plaintiff incorrectly identified SPS as "SPS Technologies, Inc." in the Complaint. Compl., ¶ 9. Declaration of Jason Dalton ¶ 3.

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92612-4414

1  throughout California, including, but not limited to, SPS.  Compl. ¶ 9.  Plaintiff
2  further alleges that SPS and PCC are his joint employers, operating as a joint
3  enterprise, and refers to them collectively as "Defendants" throughout the
4  Complaint.  *See, e.g.,* Compl. ¶ 10, 16-17.  Plaintiff asserts claims against
5  Defendants for purported wage-and-hour violations committed against all current
6  and former non-exempt employees, including claims for failure to pay overtime
7  wages, failure to provide meal periods, failure to pay vested vacation upon
8  termination, failure to pay wages upon termination, failure to provide accurate
9  wage statements and unfair competition.  *See* Compl. ¶¶ 28-33, 34-39, 40-43, 44-
10 53, 54-62, 63-67.

11        6.      Plaintiff seeks to represent a putative class – comprised of five
12 subclasses, which PCC denies can be certified as such – that includes himself and
13 all other current and former non-exempt employees who were employed by PCC
14 and SPS in California from March 26, 2010, four years preceding the filing of the
15 Complaint.  Compl. ¶¶ 1, 10, and 13-18.

## REMOVAL – CAFA

17        7.      Congress enacted the CAFA on February 18, 2005 to "expand
18 substantially federal court jurisdiction over class actions."  S. Rep. No. 109-14,
19 *43, as reprinted in 2005 U.S.C.C.A.N. 3, **41, 109 S. Rpt. 14.  Its provisions
20 "should be read broadly, with a strong preference that interstate class actions
21 should be heard in a federal court if properly removed by any defendant."  *Id.; In*
22 *re Textainer Partnership Sec. Litig.,* 2005 U.S. Dist. LEXIS 26711, *10 (N.D. Cal.,
23 Jul. 27, 2005) (quoting 151 Cong. Rec. H723-01, H-727 (2005) (statement of Rep.
24 Sensenbrenner)).

25        8.      Pursuant to the CAFA, when the number of putative class members
26 defined in a complaint exceeds 100, a federal district court has original jurisdiction
27 over "any civil action in which the matter in controversy exceeds the sum or value
28 of $5,000,000, exclusive of interest and costs, and is a class action in which . . .

any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A).

9. Further, "the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds" the $5,000,000 requirement, 28 U.S.C. § 1332(d)(6), thereby "abrogat[ing] the rule against aggregating claims." *Exxon Mobil Corp. v. Allapattah Services, Inc.,* 545 U.S. 546, 571, 125 S. Ct. 2611, 162 L. Ed. 2d 502 (2005).

10. The requirements for this Court's exercise of diversity jurisdiction over Plaintiff's purported class action are clearly and unequivocally satisfied in this case.

### Putative Class Numerosity

11. A threshold requirement of the CAFA is that there must be at least 100 putative class members. *See* 28 U.S.C. § 1332(d)(5)(B). The requirement is readily met here. First, the Complaint directly alleges that "Defendants currently employ, and during the relevant time periods employed, over two hundred non-exempt employees in the State of California." Compl. ¶ 21. Company records show that between March 26, 2010 and the present, 317 current and former non-exempt employees were employed at the SPS Santa Ana facility where Plaintiff worked. Declaration of Bruno Cuevas ("Cuevas Decl."), ¶ 4.

### Diversity of Citizenship

12. For purposes of establishing federal jurisdiction, the CAFA requires only minimal diversity; that is, at least one purported class member must be a citizen of a state different from the state of citizenship of any named defendant. 28 U.S.C. § 1332(d)(2)(A). As explained below, Plaintiff is a citizen of a state different from that of PCC, the only named defendant. Hence, the CAFA's diversity of citizenship requirement is satisfied here.

13. Plaintiff was, at the time of the filing of the Action, a citizen of the State of California. Compl., ¶ 8.

14. PCC is not a citizen of the State of California, but instead is a citizen of the State of Oregon. "[A] corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business . . . ." 28 U.S.C. § 1332(c)(1). Under the "nerve center test," a principal place of business refers to "the place where a corporation's officers direct, control, and coordinate the corporation's activities." *See Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010) ("principal place of business" means "the place where a corporation's officers direct, control, and coordinate the corporation's activities."). Both at the time the Action was commenced and presently, Defendant was and is incorporated under the laws of the State of Oregon. Declaration of Jason Dalton ("Dalton Decl."), ¶ 2. Moreover, Defendant's principal place of business is the State of Oregon, as this is its corporate headquarters and Defendant's officers direct, control and coordinate Defendant's business activities from this location. *Id.*

15. Although Plaintiff has not named SPS as a defendant in the Action, he has identified it as his joint employer with PCC and refers to SPS as a defendant in the Complaint. *See* Compl., ¶ 10. SPS is a subsidiary of PCC and has been since before this Action commenced. Dalton Decl., ¶ 3. SPS is a Pennsylvania limited liability company. *Id*. As a limited liability company, SPS is deemed to be a citizen of a state where every member is a resident or citizen. *Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006). PCC is the sole member and sole manager of SPS, and has been since before this Action commenced. Dalton Decl., ¶ 3. SPS's citizenship for purposes of removal is therefore deemed to be the State of Oregon. *Johnson*, 437 F.3d at 899. Accordingly, if the Court were inclined to consider the citizenship of SPS, minimal diversity also exists here because SPS is not a citizen of California.

16. Pursuant to 28 U.S.C. section 1441(b)(1), the citizenship of defendants sued under fictitious names shall be disregarded for purposes of

establishing removal jurisdiction under 28 U.S.C. section 1332. *See* 28 U.S.C. § 1441(b)(1); *Newcombe v. Adolf Coors Co.*, 157 F. 3d 686, 690-91 (9th Cir. 1998) (in determining whether diversity of citizenship exists, only the named defendants are considered). Thus, the existence of Doe Defendants 1 through 100, does not deprive this Court of jurisdiction.

17. Because Plaintiff is a citizen of California, a different state than that of PCC and/or SPS, which are citizens of the State of Oregon, the CAFA's requirement of minimal diversity is satisfied here. 28 U.S.C. § 1332(d)(2)(A).

## Amount-in-Controversy

18. Pursuant to the CAFA, the claims of the individual members in a putative class action are aggregated to determine if the amount-in-controversy exceeds the sum or value of $5,000,000. 28 U.S.C. § 1332(d)(6). Congress intended that federal jurisdiction properly be exercised under the CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (e.g., damages, injunctive relief, or declaratory relief)." S. Rep. No. 109-14, *42.

19. The amount in controversy is determined by adding up the value of the claim of each person who falls within the proposed class definition to determine whether the resulting sum exceeds $5 million. *Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345, 1348 (2013); *Rodriguez v. AT&T Mobility Services, LLC,* 728 F.3d 975, 981 (9th Cir. 2013) ("*Standard Fire* instructed district courts to look to the potential claims of absent class members, rather than plaintiff's complaint.") "To do so, district courts must necessarily 'look beyond the four corners of the complaint' when the complaint alleges damages below the jurisdictional minimum." *Rodriguez*, 728 F.3d at 981 (quoting from the now effectively overruled on other grounds *Lowdermilk v. U.S. Bank National Ass'n*, 479 F.3d 994 (9th Cir. 2007)).

1  20. In the Ninth Circuit, the level of proof required to satisfy the CAFA's amount-in-controversy requirement is a preponderance of the evidence. *Rodriguez, supra*, 728 F.3d at 981 (stating the preponderance of the evidence standard applies when the plaintiff does not plead a specific amount in controversy). To meet this standard of proof, the defendant must provide evidence that it is 'more likely than not' that the amount in controversy satisfies the federal diversity jurisdictional amount requirement." *Davis v. Chase Bank U.S.A., N.A.*, 453 F. Supp.2d 1205, 1209 (C.D. Cal. 2006) (*citing Abrego Abrego v. The Dow Chemical Co.,* 443 F.3d 676 , 680 (9th Cir. 2001) (remaining citations omitted). This burden is not "daunting," as courts in this Circuit recognize that a removing defendant is not obligated to "research, state and prove the plaintiff's claim for damages." *Muniz v. Pilot Travel Centers LLC*, 2007 U.S. Dist. LEXIS 31515, *7 (E.D. Cal., Apr. 30, 2007); *Thomas v. Aetna Health of California, Inc.*, 2011 WL 2002515, *6 (E.D. Cal., June 2, 2011) ("requiring Defendants to forecast an exact violation rate would essentially force a removing defendant to prove the plaintiff's case."). Thus, "[o]nce the proponent of jurisdiction has set out the amount in controversy, only a 'legal certainty' that the judgment will be less forecloses federal jurisdiction." *Brill v. Countrywide Home Loans, Inc.,* 427 F.3d 446, 447 (7th Cir. 2005).

21. In the Action, Plaintiff seeks, on behalf of himself and on behalf of the putative class damages for unpaid overtime wages, damages for unpaid wages for missed or interrupted meal periods, damages for unpaid vested vacation wages, penalties for inaccurate wage statements, pursuant to California's Labor Code section 226, damages for premium wages, damages for unpaid penalty wages, restitution under California's Business & Professions Code section 17203, prejudgment interest, costs, reasonable attorneys' fees and "such other and further relief as the Court deems just and proper." Compl., Prayer for Relief, pp. 14-15.

22. Plaintiff seeks to represent a class of all former and current non-

exempt employees who worked for PCC and SPS in California from March 26, 2010 to the present. Compl., ¶¶ 1 and 18.

23. Since PCC was served with process in the Action, PCC conducted an analysis of certain employment data furnished by SPS regarding current and former non-exempt employees who worked between March 26, 2010 and May 15, 2014 at the SPS Santa Ana facility where Plaintiff worked. *See Rippee v. Boston Market Corp.*, 408 F. Supp. 2d 982, 985-86 (S.D. Cal. 2005) (the amount-in-controversy is properly evaluated based on the plaintiff's allegations and the defendant's own employment data). PCC augmented this analysis with data from other SPS facilities in California because Plaintiff seeks to represent a class of employees employed by PCC and SPS in California, and not just employees at SPS Santa Ana. Compl., ¶¶ 1 and 18. In doing so, PCC just calculated potential waiting time penalties for these additional facilities because the underlying data for this analysis was the most readily available. Accordingly, PCC's calculation is conservative because it does include an analysis for the entire putative class identified by Plaintiff nor does it include an analysis for all claims alleged by Plaintiff, but as shown below, the jurisdictional amount is met:

24. During the putative class period, SPS Santa Ana employed 317 individuals as non-exempt employees between March 24, 2010 and the present. Cuevas Decl. ¶ 4.

25. Plaintiff contends he and the putative class members "at all times" "worked for Defendants during shifts that consisted of more than eight hours in a work day and/or more than forty hours in a work week and were not paid overtime wages … at the proper rate." Compl. ¶ 31. Plaintiff claims that Defendants failed to compensate the putative class members at the rate of no less than one and one-half times the regular rate of pay for the employee. Compl., ¶ 29 and 32. The statute of limitations for claims for unpaid wages is three years, *Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal. 4th 1094, 1099, which is extended to four

years where, as here, the plaintiff asserts an unfair business practices claim under California Business and Professions Code section 17200.  Cal. B. & P. Code § 17208.  Assuming, based on these allegations, that putative class members were deprived, on average, of one hour of overtime compensation per workweek during the four-year limitations period, a conservative estimate of the potential amount-in-controversy for this claim for SPS Santa Ana alone would be $1,418,604, exclusive of interest.  Patterson Decl. ¶ 6.b.  There were 317 current and former non-exempt employees who worked as SPS Santa Ana during the putative class period, these putative class members worked an estimated 41,910 workweeks during the applicable limitations period.  *Id*. ¶¶ 6.a., 6.b.  The estimated amount in controversy for Plaintiff's overtime claims was calculated by using the individual hourly rates for SPS Santa Ana employees and assuming one hour of overtime per week at one-and-half times their hourly rate (*i.e.,* the number of weeks worked x each employee's overtime rate x one hour of unpaid overtime per week), then totaling these individual amounts.  *Id*. ¶ 6.b.  Based on these calculations, the total estimated amount in controversy for Plaintiff's overtime claim is $1,418,604 for SPS Santa Ana employees.  *Id*.  *See Rippee*, 408 F. Supp. 2d at 985-86 (S.D. Cal. 2005) (finding the defendant's calculation of potential overtime wages reasonable because it was based on the defendant's records of the actual number of employees who worked an eight hour per day or forty hour per week schedule and noting that the defendant assumed all of the members of the class worked overtime).

26. California Labor Code section 512(a) requires employers to provide duty-free meal periods of at least 30 minutes to employees who work more than five hours in a work day.  Cal. Lab. Code § 512(a).  Labor Code section 226.7(b) provides for the payment of one hour of pay at the employee's regular rate for each day a required meal period is not provided.  Cal. Lab. Code § 226.7(b).  *See also* Compl. ¶ 36.  The statute of limitations for missed meal period claims is the same as a claim for unpaid wages, *Murphy, supra,* 40 Cal. 4th at 1114, which is extended

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92612-4414

1 to four years under California Business and Professions Code section 17200. Cal.
2 B. & P. Code § 17208.

3     27.    Plaintiff contends that he "and other non-exempt employees worked
4 *many* shifts that lasted over 5 hours without any meal periods or uninterrupted
5 meal periods." Compl., ¶ 15, emphasis added. Plaintiff alleges that he and other
6 putative class members are entitled to recover the full amount of their unpaid
7 additional pay for missed or interrupted meal periods. Compl., ¶ 39. Assuming,
8 based on these allegations, that putative class members were not provided, on
9 average, one meal period per workweek during the four-year limitations period, a
10 conservative estimate of the potential amount-in-controversy for this claim would
11 be $946,705, exclusive of interest, for SPS Santa Ana alone. Patterson Decl. ¶ 6.c.
12 This estimate was derived by multiplying each current and former SPS Santa Ana
13 employee's workweeks during the limitations periods times one hour of premium
14 pay for missed meal periods times each employee's hourly rate, then totaling these
15 individual amounts. Based on these calculations, the estimated total amount in
16 controversy for Plaintiff's meal period claim is $946,705 for SPS Santa Ana
17 employees. *Id. See, e.g., Stafford v. Dollar Tree Stores, Inc.*, 2014 WL 1330675,
18 *8 (E.D. Cal., Mar. 27, 2014) (finding reasonable an estimate of fifty percent of
19 meal periods were missed based on the plaintiff's allegations that class members
20 were "routinely" denied meal periods).

21     28.    California Labor Code section 201 requires employers to pay
22 employees whose employment is discharged their final wages immediately upon
23 discharge. Cal. Lab. Code § 201. California Labor Code section 202 separately
24 requires employers to pay employees who voluntarily quit their employment all
25 wages due within 72 hours (unless the employee has provided at least 72 hours'
26 notice of his or her intention to quit, in which case their wages are due immediately
27 at the time of quitting). Cal. Lab. Code § 202. California Labor Code section 203
28 provides that an employer who willfully fails to pay all wages due a terminating

employee, as required under either Labor Code sections 201 or 202, shall be subject to a penalty equivalent to one day's wages for each day the payment is late, up to 30 calendar days. Cal. Lab. Code § 203(a). This claim is subject to a three-year limitations periods. Cal. Lab. Code § 203(b); *Murphy, supra,* 40 Cal 4th at 1099.

29. Plaintiff alleges that Defendants "had a practice of not paying, upon termination, the (sic) all wages owed to them." Compl. ¶ 47. Plaintiff further alleges that Defendants failure to pay was willful and they "intentionally adopted a (sic) policies or practices incompatible with the requirements of Labor Code §§ 201 and 202." Compl., ¶ 48. Plaintiff seeks for himself and the putative class members "penalty wages from the date their earned and unpaid wages were due, upon termination, until paid, up to a maximum of 30 days." Compl., ¶ 50. The relevant time period for determining the amount-in-controversy arising from this claim is March 26, 2011 to the present. 92 non-exempt employees who worked at the SPS Santa Ana facility were terminated or voluntarily quit their employment during this period. Cuevas Decl. ¶ 4. Accepting as true the allegations of the Complaint, and assuming that each of the putative class members whose employment ended within the three years before removal was owed either overtime or premium pay for one workweek at the time they ceased working for SPS, the amount-in-controversy for this claim for SPS Santa Ana is estimated to be $454,365, exclusive of interest. Patterson Decl. ¶ 6.d. This estimate was derived by multiplying the final wage rate for these employees by 8 hours per day by 30 calendar days. Based on these calculations, the estimated total amount in controversy for Plaintiff's waiting time penalty claim for SPS Santa Ana is $454,365. *Id. See Jones v. Tween Brands, Inc.*, 2014 WL 1607636, *3 (C.D. Cal., Apr. 22, 2014) (court used the 30 days to calculate the waiting time penalties because the plaintiff alleged that "class members were owed waiting time penalties 'up to the 30 day maximum'.") (*citing to Coleman v. Estes Express Lines, Inc.,* 730

F.Supp.2d 1141, 1150 (C.D. Cal. 2010) ("Plaintiff included no limitation on the number of violations, and, taking the complaint as true, Defendants could properly calculate the amount in controversy based on a 100% violation rate."); *see also Rippee*, *supra*, 408 F. Supp. 2d at 983-85 (in determining the amount in controversy in a wage-and-hour class action removed from state court pursuant to the CAFA, the court focused on the lawsuit's "big ticket" claims, *i.e.,* waiting-time penalty allegations under California Labor Code section 203, and using defendants' calculations, the court observed that the potential value of the plaintiff's waiting-time penalty claim could be calculated by multiplying the number of former employees in the proposed class by thirty days' wages).

30.  Plaintiff seeks to represent all non-exempt employees of PCC and SPS in California, not just at SPS Santa Ana. Compl. ¶¶ 1, 18. SPS operates several other facilities in California, including SPS Technologies, LLC d/b/a, Air Industries Company ("Air Industries"), SPS Technologies, LLC d/b/a Cherry Aerospace ("Cherry Aerospace"), SPS Technologies, LLC d/b/a Faber Fluid Fittings ("Faber"), SPS Technologies, LLC d/b/a Airdrome ("Airdrome"), and SPS Technologies, LLC d/b/a PB Fasteners ("PB Fasteners"). Dalton Decl. ¶ 4. Applying the same analysis set forth in paragraph 29 to calculate potential waiting time penalties for these five facilities, the additional amount in controversy for waiting time penalties is estimated to be $2,304,464, broken down as follows: Air Industries ($1,143,533), Cherry Aerospace ($485,577), Faber and Airdrome ($317,609) and PB Fasteners ($367,745). Patterson Decl. ¶ 6.e. This estimate was calculated using the final wage rate and termination date information for former employees of these facilities. *Id.*; Declaration of Cedric Bray ¶¶ 2-3; Declaration of Coryn Mardian ¶¶ 2-3; Declaration of Tiffany Wing ¶¶ 2-3; Declaration of Janice Aaron ¶¶ 2-3. This final hourly rate information was multiplied by 8 hours per day times 30 days. Patterson Decl. ¶ 6.e.

31.  California Labor Code section 226(a) requires employers to provide

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92612-4414

employees with accurate itemized wage statements containing specific categories of information. Cal. Lab. Code § 226(a). California Labor Code section 226(e) provides: "An employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not exceeding an aggregate penalty of four thousand dollars ($4,000) . . . ." Cal. Lab. Code § 226(e). The statute of limitations for such penalty claims is one year. Cal. Code Civ. Proc. § 340(a).

32. Plaintiff further maintains that, in violation of California Labor Code section 226(a), Defendants failed to provide him and putative class members with accurate itemized wage statements. Compl. ¶ 57. Plaintiff alleges that, "Defendants maintained and continue to maintain a policy and practice of issuing wage statements that do not show, including but not limited to, overtime pay and pay due and owing for meal break law violations." Compl. ¶ 58. For these purported violations, Plaintiff seeks the statutory penalties provided by California Labor Code section 226(e). Compl. ¶ 61. The relevant time period for determining the amount in controversy with respect to this claim is March 26, 2013 to the date of removal. Putative class members at SPS Santa Ana were paid weekly during this time period. Cuevas Decl. ¶ 5. Thus, accepting as true the allegations of the Complaint, and assuming conservatively the putative class members who worked at SPS Santa Ana each had one underlying wage and hour violation per pay period and therefore one alleged wage statement violation per pay period, the amount placed in controversy by Plaintiff for this claim would be $737,950 (one $50 penalty for the initial pay period x 202 pay periods (the number of current and former non-exempt employees who were employed during the applicable one-year limitations period) + $100 per pay period x all the remaining pay periods worked by these individuals during the limitations period, capped at

$4,000 per employee = $737,950). Patterson Decl. ¶ 6.f. *See, e.g., Altamirano v. Shaw Industries, Inc.*, 2013 WL 2950600, **7, 11 (N.D. Cal., June 14, 2013) (finding it reasonable to assume that each putative class member suffered at least one violation during any given pay period, resulting in an inaccurate wage statement, based on the plaintiff's allegations about the pervasiveness of the defendants' policies).

33. Thus, accepting Plaintiff's allegations as true – and without even factoring in Plaintiff's requests for damages for failure to pay vest vacation upon termination (Compl. ¶¶ 40-43) and restitution (Compl. ¶ 66; Prayer for Relief ¶ I) – the potential amount in controversy in the Action before attorneys' fees is $3,557,624 for SPS Santa Ana alone ($1,418,604 for unpaid overtime compensation + $946,705 for premium compensation for missed meal periods + $454,365 for waiting-time penalties + $737,950 for itemized wage statement penalties = $3,557,624). Factoring in the potential exposure for waiting time penalties for the former non-exempt employees at five other SPS facilities in California, who Plaintiff also seeks to represent, the potential amount in controversy is $5,862,088.[2] ($3,557,624 for SPS Santa Ana + $2,304,464 for waiting time penalties at SPS facilities Air Industries, Cherry Aerospace, Faber, Airdrome and PB Fasteners = $5,862,088.) This figure is highly conservative because it only includes estimated the estimated amount in controversy for SPS Santa Ana and estimated waiting penalties for former employees of five other SPS facilities in California. It does not including potential waiting time penalty exposure for other SPS or PCC facilities in California, nor does it include the

---

[2] The calculations contained herein are all premised on the assumption, solely for purposes of establishing jurisdiction, that Plaintiff's allegations are true. PCC expressly denies each of Plaintiff's allegations, denies that this action is appropriate for class certification, denies liability to Plaintiff and the purported class members on the theories alleged in the Complaint, and denies that Plaintiff can recover attorneys' fees for certain causes of action as alleged in his Complaint. These denials do not, however, change the fact that Plaintiff's allegations have placed the requisite amount in controversy to trigger federal jurisdiction over the Action.

potential exposure for overtime, meal period premiums and itemized wage statement penalties for any of the PCC or SPS facilities in California that Plaintiff seeks to include in his class, other than SPS Santa Ana. It also does not include attorneys' fees, which would further increase the amount that Plaintiff has placed in controversy.

34. If attorneys' fees are recoverable by statute or contract, the fee claim is included in the amount in controversy regardless of whether the award is mandatory or discretionary. *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155-56 (9th Cir. 1998)). Plaintiff seeks reasonable attorney's fees and costs recoverable by law. Compl., Prayer for Relief, p. 15. In particular, he seeks attorneys' fees for his overtime, missed meal period, waiting time penalty and itemized wage statement claims. Compl. ¶ 33, 39, 53 and 62. A review of class action litigation shows that courts have historically awarded fees ranging from 20 to 50 percent, depending upon the circumstances of the case. *See e.g., Morales v. Stevco, Inc.*, 2012 WL 1790371, *16 (E.D. Cal., May 16 2012) (awarding 25% in attorneys' fees) (*citing to Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272-73 (9th Cir. 1989) (district court should take note that "25 percent has been a proper benchmark figure"); *see also Wren v. RGIS Inventory Specialists*, 2011 WL 1230826, *29 (N.D. Cal., Apr. 1, 2011) (awarding 42% in attorneys' fees).

35. For purposes of determining whether the amount in controversy requirement is satisfied, applying a 25% benchmark figure for attorneys' fees, the amount in controversy for attorneys' fees in this Action would be $1,465,522 ($5,862,088 x 25% attorneys' fee award = $1,465,522). Therefore, notwithstanding the above-listed exclusions from this calculation, the potential amount-in-controversy in this action, once attorneys' fees are included, is $7,327,610 – easily exceeding the CAFA's minimum $5,000,000 threshold.

36. PCC has properly established, by a preponderance of the evidence, that the jurisdictional amount-in-controversy requirement is satisfied here. *See*

*Abrego Abrego, supra,* 443 F.3d at 683 (where the plaintiff fails to plead a specific amount of damages, the defendant seeking removal must show "by a preponderance of the evidence that the amount in controversy requirement has been met."). Moreover, the legislative history behind the CAFA makes clear that any doubts regarding the maintenance of federal jurisdiction over class actions in cases where the existence of diversity jurisdiction is alleged should be resolved in favor of exercising federal jurisdiction. S. Rep. No. 109-14, at *42, as reprinted in 2005 U.S.C.C.A.N. 3, **40, 109 S. Rpt. 14 ("if a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000,' the court should err in favor of exercising jurisdiction over class actions. Its provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant."); *see also In re Textainer, supra*, 2005 U.S. Dist. LEXIS 26711, *10.

37. To the extent Plaintiff has alleged any other claims for relief in the Complaint over which this Court would not have original jurisdiction under 28 U.S.C. § 1332(d), the Court has supplemental jurisdiction over any such claims pursuant to 28 U.S.C. § 1367(a).

38. The United States District Court for the Central District of California embraces the county and court in which the Action is now pending. 28 U.S.C. § 84(a). Therefore, this Action is properly removed to this Court pursuant to 28 U.S.C. § 1441(a).

39. Defendant will promptly serve Plaintiff and all other parties with this Notice of Removal, and will promptly file a copy of this Notice of Removal with

/ / /
/ / /
/ / /
/ / /

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92612-4414

the clerk of the state court in which the Action is now pending, as required by 28 U.S.C. § 1446(d).

Dated: May 22, 2014

**BRYAN CAVE LLP**
Julie E. Patterson
Julie W. O'Dell


By: */s/ Julie E. Patterson*
Julie E. Patterson
Attorneys for Defendant
PRECISION CASTPARTS CORP.

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92612-4414